# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DERRELL FULTON<br><br>          Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, ET. AL.<br><br>          Defendants. | Case No. 17-CV-08696<br><br>Honorable Robert W. Gettleman<br>Presiding District Judge<br><br>Honorable Sunil R. Harjani<br>Presiding Magistrate Judge |
| NEVEST COLEMAN,<br><br>          Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, ET. AL.<br><br>          Defendants. | Case No. 18-CV-00998<br><br>Honorable Robert W. Gettleman<br>Presiding District Judge<br><br>Honorable Sunil R. Harjani<br>Presiding Magistrate Judge |

**DEFENDANTS' MOTION TO EXTEND
THE FACT DISCOVERY DEADLINE**

Defendants Michael Clancy, John Halloran, Kenneth Boudreau, James O'Brien, Gerald Carroll, William Moser, Albert Graf, Stanley Turner, Thomas Benoit, Thomas Kelly, Geri Lynn Yanow, as Independent Administrator of the Estate of William Foley, Harold Garfinkle, Cook County and the City of Chicago (collectively, "Defendants"), through their respective undersigned attorneys, move this Court for

an 9 month extension, to July 1, 2020, to complete fact discovery, and in support of this motion state as follows:

1. In 1994, Plaintiffs Nevest Coleman and Derrell Fulton, were arrested and charged with the rape and murder of Antwinica Bridgeman. They were both subsequently convicted and sentenced to lengthy prison terms. Although a third individual, Eddie Taylor, was implicated in the murder, he was the only one not to confess and, charges were dropped against him before the criminal trial. In 2017, the State moved to vacate the convictions and dismiss the charges against Plaintiffs after DNA testing on the victim's fingernails and clothing yielded a profile from which they were excluded, and from which a convicted sex offender in CODIS, Clarence Neal, could not be excluded.

2. Plaintiffs allege that Officer Defendants physically and mentally coerced false confessions from them, which served as the sole basis for their prosecutions and convictions.[1]

3. Pursuant to the Court's April 3, 2018 Order, fact discovery is currently scheduled to close on November 4, 2019. (*See* Fulton ECF 30; Coleman ECF 49).

4. Oral discovery, however, did not begin in this matter until the end of May, 2019, following the resolution of multiple discovery-related motions.

5. Those motions included Plaintiff's motion to compel the county defendants to

---

[1] On April 12, 2018, *Coleman v. City of Chicago*, 18 cv 998, was reassigned to this Court for all pre-trial proceedings (*See* Fulton ECF 39; Coleman ECF 38).

2

respond to requests to produce (Fulton ECF 68; Coleman ECF 65), multiple motions concerning the appointment of a representative of Defendant Foley's estate (*See* Fulton ECFs 50, 66, & 75; Coleman ECFs 50, 72 & 93), the City's motion to bifurcate and stay discovery on Plaintiffs' *Monell* claims (Fulton ECF 79; Coleman ECF 76), Plaintiff's motion to compel the City to produce certain Clarence Neal-related documents, (Fulton ECF 119; Coleman ECF 112), and the Cook County State's Attorney's Office's motion to quash Plaintiff's document subpoena. (Fulton ECF 121; Coleman ECF 121).

6. In April, 2019, pursuant to this Court's Order (*See* Fulton ECF 150; Coleman ECF 133), the parties jointly identified an initial group of 21 occurrence witness both sides generally wanted to depose first.

7. These witnesses included Michael Barber, who "discovered" the victim's body with Plaintiff Coleman, all of the individuals who were with Plaintiff and the victim on the last night she was seen alive, Plaintiffs' alibi witnesses, the victim's boyfriend, multiple on-scene officers and evidence technicians, the alleged "real killer," Clarence Neal, several women who had accused Mr. Neal of sexual assault, and Plaintiff's criminal co-defendant, Eddie Taylor.

8. By agreement, Defendants were responsible for issuing the deposition subpoena and taking the lead in deposing 8 of the witnesses and Plaintiffs were responsible for 13.

9. Neither side suggested that these witnesses were the only witnesses that they would seek to depose in this matter.

3

10. In order to streamline this initial round of oral discovery, the parties reserved fifteen, agreed-upon dates for these depositions starting at the end of May, 2019 through July, and agreed to alternating dates where Plaintiffs were to subpoena a witness and take the lead, then the next date the Defendants were to do the same, and so on. The Joint Status Report reflecting these dates and witnesses is located at Fulton ECF 152 and Coleman ECF 135.

11. In this time period, Defendants worked diligently to take the depositions of the witnesses they were responsible for on the seven days reserved to them, noticing seven depositions between May 29, 2019 and July 11, 2019. Plaintiffs, however, scheduled and took the deposition of Larry Calimee despite having eight dates reserved to them and did not notice a single deposition otherwise.

12. Unfortunately, despite their efforts, Defendants had significant difficulty either locating witnesses or getting subpoenaed witnesses to appear at their depositions (*See* July 9, 2019 joint status report, Fulton ECF 164; Coleman ECF 147) and were only able to depose Michael Barber.

13. In light of the number of witnesses still to be deposed, the parties reserved an additional 18 days between July 11 and September 30, 2019 to conduct depositions of the initial 21 occurrence witnesses. (*see* Fulton ECF 164; Coleman ECF 147).

14. Defendants began noticing depositions for August 1, 2019, however, Plaintiffs did not notice any of their witnesses for depositions prior to August 26, 2019 – three months after the parties began reserving deposition dates. (*See* August 12, 2019 Joint Status Report, Fulton ECF 167; Coleman ECF 150).

15. During this time period, Plaintiffs took the depositions of Forensic Specialists John Stella and Frank Gurtowski and Patrol Officer Mark Mora and Defendants took the deposition of Kamarie Williams. (*See Id.*)

16. Despite the parties' difficulty in locating most of the initial 21 occurrence witnesses, the parties scheduled the depositions of all nine Defendant Officers and both Plaintiffs to occur between October 1 and November 4, 2019.

17. However, as explained above, there are numerous occurrence witnesses that still need to be deposed in addition to other fact witnesses, some of which are identified below, that Defendants need to depose.

18. Defendants have been diligently working to complete discovery and additional time is needed to complete the depositions of many witnesses relating to the incident that occurred in 1994. However, and despite a total of six depositions having been taken, Plaintiffs object to any extension of discovery. (*See* the parties October 2, 2019 joint status report, Fulton ECF 172; Coleman ECF 154).

19. In light of the following, Plaintiffs' objection is an insincere attempt to mischaracterize what has heretofore been a mutually agreed upon deposition schedule that was designed to first address the depositions of occurrence witness and the Parties. And, it ignores Plaintiffs' recognition of the need for a discovery extension due to witness unavailability in both the recent past and during the parties' meet and confer regarding the October 2, 2019 joint status report.

20. For example, on September 13, 2019, counsel for Plaintiff Fulton asked

5

the parties to, "have a conversation about whether the parties want to move for a brief extension to complete fact discovery, since so many of the witnesses have proved difficult to serve with subpoenas." (See September 13, 2019 Email, attached as Exhibit A).

21. To that end, on October 1, 2019, at 4:01 p.m., Plaintiffs sent Defendants a draft of the parties' joint status report for purposes of identifying the remaining witnesses the parties wanted to depose. (*See* October 1, 2019 4:01 p.m. email from Kathleen Zellner, attached as Group Exhibit B). Defendants returned to Plaintiffs a red-lined version of the draft status report that identified the witnesses they still wanted to depose in addition to Plaintiffs' witnesses. (See draft of joint status report, ¶ 6, attached as Exhibit C).

22. Those witnesses included Plaintiffs' alibi witnesses, Clarence Neal's alleged victims, damages witnesses, crime laboratory personnel, representatives from the Cook County State's Attorney's Office involved in Plaintiffs' post-conviction proceedings, as well as witnesses related to Plaintiffs' juvenile arrests and prosecutions. (*See Id.*).

23. The parties subsequently exchanged additional revised drafts of the joint status report that recognized the parties' mutual understanding that the outstanding number of depositions warrants a discovery extension while also noting that the parties disagreed on the length of any extension. (*See* Ex. B, 6:49 p.m. email from Kathleen Zellner; *see also* revised draft joint status report, ¶¶ 6-8, attached as Exhibit D).

24. However, at 10:01 p.m., Plaintiff Coleman's counsel abruptly changed his position and stated for the first time that he now opposes any discovery extension because the witnesses Defendants identified "haven't been mentioned" before. (See Ex. B, October 1, 2019 10:01 p.m. email from Russell Ainsworth).

25. Plaintiff Coleman's objection is transparently disingenuous. It ignores that Plaintiffs have been unable to serve the witnesses they claim they still want to take, some of whom live far out of state. It is also at odds with Fulton's counsel's consistent position that some length of a discovery extension is needed (*See* Ex. B, 11:57 p.m. email from Kathleen Zellner) as well as his warning to Mr. Ainsworth that he does not anticipate changing his position about the need for an extension despite Mr. Ainsworth's suggestion that the parties file their joint status report late so that Mr. Fulton's attorney could "sleep on it" (*See* Ex. B, 12:21 a.m. email from Ainsworth; 12:25 a.m. email from Kathleen Zellner).

26. Although Plaintiff Fulton's counsel (mysteriously) fell in line with Plaintiff Coleman's counsel's objection to any extension of discovery past November 4, 2019 after getting a chance to "sleep on it" (*See* Ex. B, October 2, 2019 9:47 a.m. email from Kathleen Zellner), Plaintiffs' objection to a discovery extension is still meritless.

27. First, many of the remaining witnesses Plaintiffs claim Defendants "haven't mentioned before" are witnesses that were already identified in the parties' initial list of 21 witnesses. Moreover, nearly every witness Defendants identified in the parties' October 2, 2019 joint status report are listed in Defendants' initial Rule 26 disclosure.

7

28. Second, it can be no surprise to Plaintiffs that Defendants identified forensic and DNA-related witnesses since their convictions were reversed as a result of reexamined forensic evidence. Plaintiffs also know that Defendants will investigate their juvenile arrest histories since both claim their confessions were a result of their youth and inexperience with law enforcement and, for example, Plaintiff Fulton was released in the months prior to his arrest for raping and murdering Antwinica Bridgeman, for raping a very young child – a crime he pled guilty to.[2] In this context, Plaintiff undoubtedly knew Defendants would seek to depose witnesses related to these topics. As such, his objection is nothing more than gamesmanship aimed at interfering with Defendants legitimate (and likely damaging) discovery efforts.

29. In light of the above, Plaintiffs' objection is disingenuous and without merit. Indeed, Plaintiffs have never, heretofore, objected to a discovery extension, rather, they have explicitly solicited a discovery extension. Neither side has previously taken the position that the only depositions to be taken in this matter are the first round of occurrence witnesses and parties. Nor has either side ever requested or submitted to the other an exhaustive list of deponents. Lastly, and directly contrary to Mr. Ainsworth's assertion, the witnesses Defendants want to depose are also listed on Defendants' initial disclosures.

30. Against this backdrop, Plaintiffs' objection is exposed as an attempt to obfuscate what has heretofore been a mutually agreed upon deposition schedule that was designed to first address the depositions of occurrence witness and the Parties

---

[2] Defendants petition for an order releasing Plaintiffs' juvenile law enforcement and court records is currently pending before the Cook County Juvenile Court.

for purposes of convincing this Court to help Plaintiffs unfairly limit Defendants' access to necessary discovery.

31. Defendants require additional time to fully complete fact Discovery and an extension of time to complete discovery will not prejudice any party and is not being sought for purposes of delay.

WHEREFORE, for the foregoing reasons, Defendants respectfully request this Court grant them until July 1, 2020 to complete fact discovery, and for such further relief as this Court deems just and equitable.

Dated: October 4, 2019                    Respectfully submitted,


/s/ Andrew J. Grill                        /s/ Lisa M. Meador
Andrew J. Grill                            Lisa M. Meador
Attorney for Defendant Officers            Attorney for Defendant City
Rock Fusco & Connelly                      The Sotos Law Firm
321 N. Clark Street, Suite 2200            141 W. Jackson Blvd., 1240A
Chicago, Illinois 60654                    Chicago, Illinois 60143
(312) 474-1000                             (630) 735-3300


                                           KIMBERLY M. FOXX
                                           State's Attorney of Cook County

                                           /s/ Derek Kuhn
                                           Derek R. Kuhn
                                           Attorney for Harold Garfinkel and
                                           Cook County
                                           Assistant State's Attorneys
                                           Complex Litigation Section
                                           500 Richard J. Daley Center
                                           Chicago, Illinois 60602
                                           (312) 603-5527
                                           derek.kuhn@cookcountyil.gov

9