# Exhibit E

```
 1              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3
      DERRELL FULTON aka DARRYL      )  Docket No. 17 CV 8696
 4    FULTON,                        )
                                     )
 5              Plaintiff,           )
                                     )  Chicago, Illinois
 6         -vs-                      )  December 4, 2020
                                     )  10:30 o'clock a.m.
 7    CHICAGO POLICE OFFICER         )
      WILLIAM FOLEY, et al.,         )
 8                                   )
                Defendants.          )
 9    _____
      NEVEST COLEMAN,                )  Docket No. 18 CV 998
10                                   )
                Plaintiff,           )
11                                   )
           -vs-                      )  Chicago, Illinois
12                                   )  December 4, 2020
      CITY OF CHICAGO et al.,        )  10:30 o'clock a.m.
13                                   )
                Defendants.          )
14

15     TRANSCRIPT OF TELEPHONIC PROCEEDINGS - Motion Hearing
           BEFORE THE HONORABLE SUNIL R. HARJANI
16

17    APPEARANCES:

18    For Plaintiff           KATHLEEN T. ZELLNER & ASSOCIATES
      Fulton:                 BY:  MR. NICHOLAS M. CURRAN
19                            1901 Butterfield Road
                              Suite 650
20                            Downers Grove, Illinois  60515

21

22
                 LAURA LACIEN, CSR, RMR, FCRR, CRR
23                   OFFICIAL COURT REPORTER
                    219 South Dearborn Street
24                          Room 1212
                    Chicago, Illinois  60604
25                       (312) 408-5032
```

```
 1    APPEARANCES:   (Cont'd)

 2    For Plaintiff              LOEVY & LOEVY
      Coleman:                   BY:  MR. RUSSELL R. AINSWORTH
 3                               311 North Aberdeen Street
                                 Third Floor
 4                               Chicago, Illinois  60607

 5    For Defendant Foley:       ROCK FUSCO & CONNELLY LLC
                                 BY:  MR. ANDREW J. GRILL
 6                                    MR. PATRICK R. MORAN
                                 321 North Clark Street
 7                               Suite 2200
                                 Chicago, Illinois  60654
 8
      For Defendant Cook         TRIBLER ORPETT & MEYER PC
 9    County and                 BY:  MS. AMY M. KUNZER
      Garfinkel:                 225 West Washington Street
10                               Suite 2550
                                 Chicago, Illinois  60606
11
      For Defendant City:        SOTOS LAW FIRM PC
12                               BY:  MS. LISA M. MEADOR
                                      MS. SARA J. SCHROEDER
13                               141 West Jackson Boulevard
                                 Suite 1240A
14                               Chicago, Illinois  60604

15    For Respondent Cook        COOK COUNTY STATE'S ATTORNEY'S OFFICE
      County:                    BY:  MS. JESSICA M. SCHELLER
16                               500 Richard J. Daley Center
                                 5th Floor
17                               Chicago, Illinois  60602

18    For Respondent Cook        COOK COUNTY STATE'S ATTORNEY'S OFFICE
      County:                    BY:  MR. LYLE K. HENRETTY
19                               50 West Washington Street
                                 Suite 2760
20                               Chicago, Illinois  60602

21

22

23

24

25
```

1      (The following telephonic proceedings were held

2   remotely:)

3            COURTROOM DEPUTY:  Case Number 17 CV 8696, Fulton

4   versus Foley; and Case Number 18 CV 998, Coleman versus City

5   of Chicago.

6            THE COURT:  Okay.  Good morning, everyone.  For the

7   record, this is Judge Harjani speaking.  Can I have your

8   appearances please starting with plaintiffs' counsel?

9            MR. CURRAN:  Good morning, your Honor.  Nicholas --

10           MR. AINSWORTH:  Go ahead.

11           MR. CURRAN:  Sorry, Russell.

12           MR. AINSWORTH:  Go ahead, Nic.

13           MR. CURRAN:  This is Nicholas Curran on behalf of

14   Plaintiff Fulton.

15           MR. AINSWORTH:  And this is Russell Ainsworth

16   appearing on behalf of Mr. Coleman.

17           THE COURT:  Okay.  Good morning.  And then for

18   defendants taking -- as always, taking one by one generally

19   the order as listed in the complaint if you remember that.

20   Go ahead.

21           MR. MORAN:  Good morning, Judge.  This is Pat

22   Moran.  I represent the police officer defendants in both

23   lawsuits.

24           MR. GRILL:  Good morning, your Honor.  This is

25   Andrew Grill.  I, along with Mr. Moran, represent the police

1    officer defendants in both lawsuits as well.

2            MS. MEADOR:  Good morning, your Honor.  This is

3    Lisa Meador -- with me is Sara Schroeder -- on behalf of the

4    City of Chicago.

10:36AM 5            MS. KUNZER:  Good morning, your Honor.  This is Amy

6    Kunzer.  I'm representing the County and Harold Garfinkel.

7            MR. HENRETTY:  Good morning, your Honor.  This is

8    Lyle Henretty and we have Jessica Scheller here for the

9    Respondents.

10:36AM 10            THE COURT:  Okay.  That sounds like that's

11   everybody.  Okay.  Thank you for your time.

12            We're here today for me to give you a ruling on the

13   motion that is pending before me, which is the Motion to

14   Quash the deposition subpoena of Eric Sussman and essentially

10:36AM 15   through the briefing to also include Mark Rotert and I've

16   reviewed the motion, which was filed -- it has Docket Number

17   238.  I reviewed the -- all the responses that were submitted

18   and the reply brief and the surreply brief that has been

19   submitted along with the affidavit of Jessica Scheller.

10:37AM 20   Okay.  And I'll give you my ruling.

21            Any updates, though, on this matter before I give

22   you my ruling, plaintiffs' counsels?

23            MR. CURRAN:  This is Nicholas --

24            MR. AINSWORTH:  Nothing to update.

10:37AM 25            THE COURT:  Mr. Ainsworth, nothing -- I think you

1 said nothing to update?

2     MR. AINSWORTH:  That is correct, Judge.

3     THE COURT:  Okay.  And for the Respondents,

4 anything to update?

5     MR. HENRETTY:  No, your Honor.

6     THE COURT:  Okay.

7     COURT REPORTER:  I'm sorry.  Court reporter, court

8 reporter.  I'm not sure who said "No, your Honor."

9     MR. HENRETTY:  Sorry.  Lyle Henretty for the

10 Respondents.  No, your Honor.

11     THE COURT:  Okay.  And then for the defendant

12 officers?  Again, as always, state your name before you

13 respond.  Go ahead.  Defendant officers?  Hello?

14     MR. GRILL:  Sorry.  This is Andrew Grill --

15     MR. MORAN:  This is Pat Moran --

16     MR. GRILL:  -- I was on mute.  Nothing to update

17 for the defendant officers.

18     THE COURT:  Okay.  And the City?

19     MS. MEADOR:  Lisa Meador, your Honor.  There is

20 nothing to update for the City as well.

21     THE COURT:  Okay.  Thanks.  I know it's not easy.

22 Normally, I would just ask you and in court I would look at

23 your faces and I would know there's nothing to update but

24 we're not there and so we have to go through this rigmarole

25 by doing this by phone.

1          All right.  The Court has considered, as mentioned,

2   all of the issues along with the briefing as well as the

3   arguments of the parties on this Motion to Quash and the

4   Court finds as follows:

5          First, the information that the defendants seek

6   from Mr. Sussman and Mr. Rotert constitutes relevant

7   information.  It is anticipated that the plaintiffs will seek

8   to introduce the Certificate of Innocence as well as the fact

9   that the Cook County State's Attorney's Office first decided

10  to ask for a retrial and then decided to dismiss the charges

11  and to use those various positions and the Certificate to

12  argue that it is indicative of innocence.  And, indeed, the

13  Seventh Circuit in the *Patrick* case affirmed the introduction

14  of that evidence recently.  Certainly there were some bases

15  in there for the defendants to argue that it shouldn't be

16  admitted, nevertheless the Court must anticipate that the

17  District Court may very well introduce this evidence, both

18  the Certificate of Innocence, along with the various

19  positions by the State's Attorney's Office.

20         And in particular, the Court sees the way it was

21  used in prior cases, particularly the *Harris* case.  In *Harris*

22  *v. City of Chicago*, the court notes that it was --

23  plaintiffs' counsel used these pieces of evidence to argue

24  the fact of innocence and also argued that the State's

25  Attorney's Office could have opposed the motion to dismiss

1    and chose not to as indicative of innocence; and that *Harris*

2    case is that 2018 WL 2183992.

3              And so while the Certificate of Innocence in

4    particular the Court understands does not have res judicata

10:40AM   5    effect under Illinois law and even though there is some

6    language in the Certificate of Innocence demonstrating that

7    it is not a concession by the SA, the State's Attorney, that

8    the defendant is innocent, nevertheless the -- these pieces

9    of evidence the Court has to assume that plaintiffs may try

10:41AM   10    to use that as indicative of evidence -- of innocence at

11    trial and that it is relevant for the defendants to then

12    explore rebuttal evidence designed to show or argue that

13    these decisions by the State's Attorney and the Certificate

14    of Innocence is not automatically indicative of innocence,

10:41AM   15    that just because these decisions were made does not mean

16    that the defendant -- that the plaintiffs are innocent.

17              So this is an issue that will likely occur at

18    trial.  It is for the jury to give weight and decide whether

19    or not these decisions are able to allow for that inference

10:42AM   20    of innocence or not and I understand that courts oftentimes

21    provide limiting jury instructions on this matter.  But,

22    nevertheless, the relevance here is what is significant and

23    the relevance is to allow defendants the opportunity in

24    discovery to explore evidence designed to rebut that

10:42AM   25    potential inference of innocence and the arguments associated

1    with it.

2              The -- moreover, there's at least factors before me

3    that demonstrates that the defendants' arguments may have

4    merit and are worthy of exploration in discovery.  The

10:42AM  5    State's Attorney's belief does not equate the issuance of a

6    Certificate of Innocence as indicative of innocence and talks

7    about how there's more to the story.  There are factors

8    besides actual instances that are considered and that's

9    evident from the various needed interviews given by

10:43AM  10    Mr. Rotert and discussions publicly about what goes into

11    consideration, including statements made in court, at the

12    time certain decisions are not opposed or made.

13              And so the Court finds that -- and essentially the

14    affidavit of Ms. Scheller gives some light that there are

10:43AM  15    decisions besides actual innocence that go into the calculus.

16    This does not seem to be an issue of dispute and so in that

17    there is relevance here to that exploration.

18              And while the Court understands the Respondents

19    have argued that it is the state court judge that decides

10:44AM  20    whether or not to grant the Certificate of Innocence, it is

21    still important that the State's Attorney's Office does not

22    object.  This is an adversarial proceeding; and with an

23    objection, it likely there would be a hearing.  With no

24    adversarial proceeding and a non-objection or taking no

10:44AM  25    position, it is likely that the Certificate of Innocence will

1   be granted and that's what happened here.

2          So while the Court understands that the State's

3   Attorney's Office might have a final say in the matter, it is

4   still an important part of the process.  And why the State's

5   Attorney's Office chose not to object is important to rebut

6   arguments made by the plaintiff at trial because it is a

7   significant factor in the granting of the Certificate of

8   Innocence.

9          So overall, the first consideration here is whether

10  or not the information is relevant; and for the reasons the

11  Court has just discussed, the Court finds that the relevancy

12  basis is met.

13         Second, the issue is whether or not Mr. Sussman and

14  Mr. Rotert are the right individuals and the Court finds they

15  are for purposes of deposition.  They were personally

16  involved in the decisions here, there's really no dispute

17  about that, and they will have relevant information to share.

18  And while the State's Attorney's Office offered a compromise

19  Rule 30(b)(6) witness, that offer was rejected and the Court

20  suggested a compromise but that was not accepted and, of

21  course, the defendants are not obligated to accept a

22  compromise and what the deposition subpoena was for Sussman

23  and Rotert and then the Court will accordingly rule on the

24  motion as it stands.  And all that's required under the

25  Federal Rules is that individuals who are noticed, to the

10:44AM

10:45AM

10:45AM

10:45AM

10:46AM

10

1    extent they meet issues of relevance and proportionality, may

2    have personal knowledge about the issue at hand.  And in this

3    case, Sussman and Rotert both have personal knowledge about

4    the issues that we are discussing and therefore the -- their

10:46AM    5    witnesses are appropriate for purposes of deposition on these

6    issues.

7            Third, the Court finds that the Apex Doctrine does

8    not bar the testimony of Mr. Sussman and Rotert.  Both are no

9    longer at the State's Attorney's Office.  They are no

10:46AM    10    longer sen -- no longer at senior government-level positions.

11    So the com -- the issues that are commonly discussed by the

12    Apex Doctrine, such as the responsibilities of senior-level

13    officials and their time commitments associated with those

14    positions in not having to be distracted or not having to be

10:47AM    15    pulled away from their official duties by constantly giving

16    depositions, those factors the Court finds are not relevant

17    here.  They are both out of senior-level government positions

18    at this time and the Court also notes that they recently

19    testified in the *Brown* case on several topics and the Apex

10:47AM    20    Doctrine certainly did not bar their testimony in that case.

21    And in addition for purposes of current circumstances, they

22    are -- their depositions will be done remotely and that also

23    will minimize the time associated and the -- with taking

24    these depositions.

10:47AM    25            Fourth, the key issue here that has been raised by

11

1  the parties is the issue of the deliberative process

2  privilege and the work product privileges and as it relates

3  to Sussman and Rotert because, of course, they were engaged

4  in internal deliberations about whether to seek a new trial,

5  whether to dismiss the charges, and whether or not to oppose

6  the Certificate of Innocence.  And it's clear to the Court

7  from reading the briefs that the defendants seek to inquire

8  as to the reasons for those actions and that implicates the

9  deliberative process and work product privileges.

10          At the outset, the Court finds that the affidavits

11  submitted by the Respondents provides a reasonable and

12  sufficient basis to invoke the privilege.  The affidavits

13  certainly could have been better; and I recognize the

14  defendants' arguments on that matter.  There is certainly

15  more than just facts in there.  There is some argument in

16  that affidavit which is not appropriate for purposes of an

17  affidavit.  However, the affidavit combined with multiple

18  representations by the Respondents in its brief and during

19  several discussions on this motion with the Court, the Court

20  finds it's sufficient to invoke preliminarily the

21  deliberative process and work product privileges on this

22  issue.

23          The next issue for the Court to consider is whether

24  or not the issues -- again, when I say "these issues," I'm

25  talking about the motion to seek a retrial and then to

12

1   dismiss and then a Certificate of Innocence do not oppose it.

2   The respond -- the defendants argue that these issues here

3   are post-decisional but the Court finds that that is not the

4   case and that the inquiry that the defendants seek here are

10:49AM   5   pre-decisional.

6           The final decision, if you will, here publicly was

7   made to dismiss the case and then to not oppose the

8   Certificate of Innocence.  Those are the final decisions of

9   the agency.  The reasons for it are pre-decisional.  They are

10:50AM   10   not necessarily publicly made in court.  They are, therefore,

11   not part of the final decision that was made by the agency.

12   The final decision is to not oppose to seek new trial, to

13   seek a dismiss and therefore the -- what defendants really

14   seek is the rationale of logic behind these ultimate and

10:50AM   15   final decisions.  And so the Court finds that the rationale,

16   if you will, is pre-decisional.

17           And the Court is guided by many of the cases

18   associated with deciding this issue, particularly on the

19   *Saunders case versus City of Chicago* and the *Allen versus*

10:51AM   20   *Chicago Transit Authority* case that discusses the doctrine of

21   deliberative process privilege.

22           Next, the Court considers the various factors

23   discussed of the privileges and finds that the defendants

24   cannot so easily pierce the privilege, if you will, because

10:51AM   25   there is other evidence that can address the issue of whether

1    these decisions equate to a decision on innocence.  That is,

2    even though these privileges are not absolute, the Courts do

3    consider whether or not other evidence can suffice in

4    allowing the issue to be explored and the Court finds that it

10:51AM    5    can; and I'll explain that in a minute.

6         The issue, however, here is whether or not the

7    depositions can be fully quashed completely as a result of

8    the invocation of the privilege and the Court finds that that

9    cannot be the case.  As with any privilege, there must be a

10:52AM    10   question-by-question or topic-by-topic analysis or, in a case

11   of a document, a document-by-document analysis as to whether

12   the information that item is privileged or not.  It's much

13   like documents are used for privilege, one cannot say that

14   everything a witness has to testify about in the universe of

10:52AM    15   his knowledge is privileged.  There must be a more particular

16   inquiry.  And here, that is particularly important because

17   there are topics that have been waived, number one; and,

18   number two, there are topics that are outside the relevant

19   privileges.

10:52AM    20        The topic first concerning the reasons the

21   Respondents moved for a retrial and then moved to dismiss

22   have been waived.  There have been several public discussions

23   of the issue by both Mr. Sussman and Mr. Rotert and by

24   State's Attorney Kim Foxx.  In particular, Mr. Rotert gave a

10:53AM    25   lengthy interview where he discussed some of his rationale

1   for the positions that were taken by the State's Attorney.

2   Mr. Sussman made some brief statements on the issues

3   regarding new DNA evidence.  And so there are public

4   statements out there as to the reasons why the State's

5   Attorney's sought first a retrial and then sought to dismiss.

6   And while those public statements may not have included all

7   the reasons, the Court finds that these statements made

8   publicly are sufficient to constitute a waiver as to the

9   reasons for the decision for a retrial and then dismissal of

10  the conviction in this case.  And the Court is informed by

11  the decision by Judge Valdez in the *Hood* case regarding

12  Governor Quinn and much of the same factors that played into

13  that decision are present here.

14          There was some argument in the briefings that the

15  disclosure of witness interviews may constitute a waiver --

16  regarding the reinvestigation constitutes a waiver and the

17  Court does not find that persuasive.  Witness interviews

18  primarily contain factual materials, factual information

19  about what witnesses have said and, of course, facts are not

20  protected by the privilege; only the internal deliberations

21  and the work product are protected.  Of course anything that

22  a lawyer writes down the Court understands somehow does

23  implicitly, you know, involves some degree of a mental

24  impression but generally factual information taken down by

25  lawyers about a witness interview is primarily fact-related

1       and so the Court finds that just because witness interviews

2       were produced doesn't mean there's a waiver; nevertheless,

3       the public interviews by the various officials I mentioned is

4       the basis for finding a waiver on the issue of the motion to

10:55AM  5      retry and then the motion to dismiss.

6                The second big topic is concerning the Certificate

7       of Innocence and the Court finds that that -- the privileges

8       associated with that have not been waived.  There has been no

9       similar public statements that have been made.  The internal

10:55AM  10      deliberations regarding the decision to not oppose the

11      Certificate of Innocence has not been revealed publicly and

12      thus the privileges are maintained as to the reasons why the

13      Certificate of Innocence was not opposed in this case.

14                Finally, there are topics that you may have

10:56AM  15      discussed during a deposition here that will allow the

16      defendants to challenge the eventual arguments expected from

17      the plaintiffs that these decisions are indicative of

18      innocence while still maintaining the privilege so the right

19      result here is somewhere in between the two positions.  It is

10:56AM  20      not to disregard or find the privilege inapplicable as the

21      defendants may seek, nor is a full quash of the subpoenas at

22      the outset as Respondents seek.  Rule 26, along with the

23      Court's inherent authority to manage discovery, allows the

24      Court to limit discovery to the extent necessary to

10:56AM  25      effectuate Rule 1's purposes.

1          And so these are the topics the Court will permit

2     at the deposition of Sussman and Rotert in line with the

3     decision the Court has made today.  And, of course, I know

4     you'll order this transcript so it will be clear to you when

5     you order it and get it but here they are, nevertheless.

6          Number one, the policies and procedures followed

7     during the reinvestigation by the Conviction Integrity Unit

8     as well as any policies and procedures followed with respect

9     to the Certificate of Innocence, okay.  These policies and

10    procedures are the general policy and procedures that the

11    State's Attorney's Office follows -- if there are any, if

12    they indeed do exist -- with regard to the decision to not

13    retry, to dismiss, and to not oppose the Certificate of

14    Innocence.  They do not necessarily -- because they're

15    policies and procedures, they don't necessarily apply to this

16    case as well.  They are the general policy and procedures and

17    the Court finds that's -- that's relevant because it is

18    important to give context to the ultimate decision that was

19    made to allow the jury to understand what policies and

20    procedures exist and how the decision is made by the State's

21    Attorneys Office about these issues.

22         The second topic the Court will allow is whether

23    those policies and procedures were followed in this case on

24    both the issues.  They both made the decision to

25    retry/dismiss, which I often lump into one, and the decision

1    on the Certificate of Innocence.  So this doesn't mean that

2    you get to explore the underlying reasons -- I'll get to that

3    in a moment -- but it's just a question of whether or not the

4    general policies and procedures were followed in this case,

10:59AM   5    if they even exist.  And those are relevant again to support

6    the parties' various arguments that there was a process for

7    the reinvestigation into decisions and to give context and

8    legitimacy to the ultimate decision made by the State's

9    Attorney's Office so that both sides can argue the facts in

10:59AM   10   their own way for their own purposes.

11           The third topic the Court will allow will be the

12   nature and sources of materials reviewed during the

13   investigation on both issues.  Again, both have the decision

14   of retry/dismiss as well as a Certificate of Innocence.

10:59AM   15   These are just discussing the nature and source of materials.

16   They're not -- they are not -- they are not invading the

17   deliberative process privilege or the work product privileges

18   so testimony such as reconsidered the witness interviews,

19   reconsidered DNA evidence, things like that, are going to

11:00AM   20   give context to the ultimate decision that is -- that was

21   made by the State's Attorney's Office.

22           With respect to topic four, which is the motion to

23   retry and then to dismiss, the Court has already stated that

24   the -- it finds that the privileges have been waived on this

11:00AM   25   topic and so the Respondents -- excuse me, the defendants can

18

1    inquire as to the decisions -- to the reasons why the State's
2    Attorney decided to first retry and then dismiss the case
3    against the plaintiffs.

4           Okay.  Five, the Court will allow testimony about
5    the general factors considered by the State's Attorney's
6    Office in evaluating generally whether to oppose or not
7    oppose a Certificate of Innocence without consideration of
8    this particular case.  The Court has found that the
9    deliberative process privilege does apply and the work
10   product relationship does still apply with respect to the
11   Certificate of Innocence and therefore the defendants cannot
12   explore the exact reasons in this case for why the
13   Certificate of Innocence was not opposed.

14          However, the general factors considered, the Court
15   finds, in all cases does not invade the deliberative process
16   privilege or the work project -- the work product privileges.
17   Indeed, in the affidavit of Jessica Scheller, she has already
18   disclosed that there are other factors beyond the issue of
19   innocence in making the decision.  In fact, I think she said
20   "the CCSAO decides not to intervene on Certificates of
21   Innocence for many reasons oftentimes based on procedural,
22   collateral, or evidentiary flaws unrelated to the CCSAO's
23   belief in whether the individual is guilty of the charged
24   crimes."

25          And so the Court finds that the general factors

11:00AM
11:01AM
11:01AM
11:01AM
11:02AM

19

1    that are considered by the State's Attorney's Office don't

2    invade the pre-decisional discussions and frankly are already

3    talked about by the State's Attorney's Office in this filing.

4    And beyond that, this general factors the Court believes will

11:02AM   5    give the defendants enough to counter arguments that the

6    Certificate of Innocence is representative of innocence.

7    While they will not know the exact reasons for this case why

8    the Certificate of Innocence was not opposed because of the

9    privilege, the Court finds the general factors will be enough

11:03AM   10   to make the argument and to allow the jury to make various

11   inferences from the arguments that are made by counsel.

12          Topic six will be allowed is the statements made by

13   counsel for the plaintiffs to the State's Attorney's Office,

14   to Sussman and Rotert, during the investigation, decision on

11:03AM   15   retrial, dismissal, or Certificate of Innocence.  Third-party

16   comments, of course, by counsel for plaintiffs are not

17   subject to the privilege.  They're not internal deliberations

18   by the State's Attorney's Office and the Court finds that

19   these statements might -- might in some way provide some

11:03AM   20   helpful information with respect to the defendants' argument

21   about innocence versus non-innocence for these decisions.

22          And seven, the Court finds that statements to the

23   press on these issues are not subject to the privilege, of

24   course, if made publicly; and again, they may contain

11:04AM   25   relevant details or reasons for this decision.  Of course,

1     the Court is not in any way discussing admissibility here.

2     Relevancy is broader than admissibility.  Discovery can take

3     you to count things that do not -- are not ultimately

4     admissible.  But for purposes of discovery, the Court finds

5     that there's a sufficient basis to allow this inquiry given

6     what has happened in past cases and given what the plaintiff

7     potentially seeks to do here.

8            So just to make -- one more time, generally the

9     topics that the Court has provided, which is our seven

10    topics, are generally not covered by the deliberative process

11    or work product privileges except for number four, which is

12    the decision to retry and then to dismiss.  That topic, the

13    Court has found, has been waived as a result of the public

14    discussion of the issue.

15           And in making this decision, the Court has formed

16    and -- informed and finds persuasive the reasoning of Chief

17    Judge Pallmeyer in the *Brown* case, which employed a similar

18    analysis as this Court, involving the same two witnesses and

19    involving essentially identical issues.  And while the

20    Court's decision may differ here and there from what Judge

21    Pallmeyer's reasoning is, nevertheless the Court has found

22    persuasive the majority of what Judge Pallmeyer discussed in

23    her ruling on the *Brown* case.  And so that is the decision of

24    the Court.

25           The Motion to Quash, which is Docket Number 238, is

1    denied and -- however, the Court has -- in evaluating this

2    issue has placed various limitations on the deposition of

3    Mr. Sussman and Mr. Rotert as I just discussed in allowing

4    these depositions to go forward and that is the ruling of the

11:06AM    5    Court.

6          So the question that we have is when these

7    depositions can get done.  So I'll allow Respondents to go

8    since you're producing the witnesses.  I'm, of course,

9    sensitive to the fact that the holiday is coming up and you

11:06AM    10    are a third party not involved in this litigation but,

11    nevertheless, I do want to try to get this done fairly soon

12    because we are essentially at the end of discovery.

13          So, Respondents, give me some thoughts on time

14    frame, if you can.  If you need more time, that's fine as

11:07AM    15    well.

16          MR. HENRETTY:  Your Honor, this is Lyle Henretty.

17    I obviously have to talk to the two individuals again about

18    this given time.  I think, you know, certainly we could get

19    this done by mid January given my schedule and, you know, we

11:07AM    20    have a lot going on right now but that would be what I would

21    ask.

22          And then also, just sort of a request, given -- you

23    know, it seems like similar what happened with the *Brown*

24    case, I would ask that these depositions be limited in time

11:07AM    25    from the seven hours down to, I think Judge Pallmeyer

1     ordered, three hours.

2          THE COURT:  Okay.  I did read the transcripts.  I

3     did think that all the questions that needed to be asked

4     seemed to be done in three hours but let me throw it to the

11:07AM  5     defendants now to talk about the time frame about getting

6     this done by mid January along with the number of hours of

7     the deposition.  Defendant?

8          MR. MORAN:  Judge, this is Pat Moran.  I think mid

9     January is fine.  The only potential hiccup there is we

11:08AM 10    are -- it appears all the press statements were not produced

11    by the State's Attorney Office and the State's Attorney's

12    Office has requested a subpoena from us and we need to confer

13    with the plaintiffs' attorney to see if there's an objection

14    to that.  If there isn't, I don't think it would be -- it

11:08AM 15    would be anything to delay this timeline that has been

16    proposed.  So I think January 15th, setting that aside,

17    should be okay.  Were you going to say something?

18          MR. HENRETTY:  Me?  No.

19          MR. MORAN:  No.  I heard a noise so I thought you

11:08AM 20    were trying to interject.

21          MR. HENRETTY:  No problem.

22          MR. MORAN:  And then as for the time limit on the

23    depositions, Judge, that wasn't requested in the motion for

24    starters.  I don't think it's particularly fair to throw it

11:08AM 25    out now.  But setting that aside as well, it doesn't look

23

1    like these motions -- or these transcripts -- I'm sorry, the

2    depositions would be completed in three hours.  I think --

3    you know, I'm not saying we definitely need a full seven

4    hours but I also believe that this isn't an apples-to-apples

11:09AM    5    comparison to the *Brown* case.

6            For starters, there's two claimants here, not one,

7    and it seems to be more complicated because of that and

8    there's different involvement between -- alleged involvement

9    between Fulton and Coleman because -- so I think -- and

11:09AM    10   different considerations between both of them.  So I think a

11   three-hour limitation I don't think is reasonable or

12   warranted in this case.  I think, you know, we should be

13   allowed to just take a deposition consistent with the rules.

14   We're not interested in prolonging depositions just for the

11:09AM    15   sake of doing it so -- you know, and we've been able to

16   handle, you know, privilege issues and things like that just

17   fine.  And the depositions that have gone thus far -- for

18   example, we took the defense attorneys' depositions and when

19   privileges were waived, there wasn't like extensive debate

11:10AM    20   about that.  So I think -- I think the three-hour limit is

21   not something that should be imposed in this particular case.

22           THE COURT:  Okay.  So I'll tell you what I'm going

23   to do.  I hear both of your arguments.  At this time, I'm not

24   going to impose any limitations.  I'm going to trust that the

11:10AM    25   defendants and the plaintiffs, who are experienced counsel

24

1     here, are going to move expeditiously through this -- these

2     depositions.  I know there are two plaintiffs here and so

3     that's a factor.  I know that the defendants have to cover

4     issues that may be associated with two plaintiffs and then

11:10AM  5     you have two plaintiffs' counsel who may want to ask

6     questions at the end so at this time I'm not going to impose

7     any limitations.

8          I would suggest that if after the first deposition

9     for some reason Respondents feel that their deposition was

11:11AM  10    not done expeditiously and was wasting time, you can come

11    back to me on a motion but you're all experienced counsel

12    here.  The rules allow for a deposition of seven hours and I

13    don't see a basis here to limit it at this time for the

14    reasons I've stated.

11:11AM  15         Okay.  So with respect to the time frame, I will

16    order these depositions to be completed by January 15th of

17    2021.  Okay.  With that, Respondents, anything else at this

18    time?

19         MR. HENRETTY:  This is Lyle Henretty.  I don't

11:11AM  20    believe so, your Honor.

21         THE COURT:  Okay.  Defendants, anything else?

22         MR. MORAN:  Not from the defendant police officers.

23         COURT REPORTER:  I'm sorry.  This is the court

24    reporter.  Who was that?

11:12AM  25         MR. MORAN:  I'm sorry.  This is Pat Moran for that.

25

1      THE COURT:  Okay.  City of Chicago?

2      MS. MEADOR:  Lisa Meador.  No, no other issues.

3  Thank you, your Honor.

4      THE COURT:  Okay.  For Mr. Fulton?

5      MR. CURRAN:  No -- excuse me.  No, your Honor.

6      THE COURT:  Okay.  And that was Mr. --

7      MR. CURRAN:  I apologize.  Nicholas Curran on

8  behalf of Plaintiff Fulton.

9      THE COURT:  That's okay.  And Mr. Coleman?

10     MR. AINSWORTH:  This is Russell Ainsworth.  Nothing

11  from Mr. Coleman.

12     THE COURT:  Okay.  Thank you all for your time.

13  Everyone have a good weekend.  We're adjourned.

14     (Proceedings concluded at 11:12 a.m.)

15

16              C E R T I F I C A T E

17     I hereby certify that the foregoing is a telephonic

18  transcript of proceedings before the Honorable Sunil R.

19  Harjani on December 4, 2020.

20

21

22  /s/*Laura LaCien*                December 7, 2020
    Official Court Reporter          DATE

23

24

25

11:12AM

11:12AM

11:14AM