IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Derrell Fulton, AKA Darryl Fulton, | ) | |
| | ) | Case No. 17 CV 8696 |
| Plaintiff, | ) | |
| | ) | Hon. Judge Pacold |
| v. | ) | |
| | ) | Magistrate Judge Harjani |
| City of Chicago, et al., | ) | |
| Defendants. | ) | |
| Nevest Coleman, | ) | |
| | ) | Case No. 18 CV 998 |
| Plaintiff, | ) | |
| | ) | Hon. Judge Pacold |
| v. | ) | |
| | ) | Magistrate Judge Harjani |
| City of Chicago, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**THE OFFICER DEFENDANTS' SUR-SUR REPLY TO
PLAINTIFF'S SUR-REPLY REGARDING COLEMAN'S SHAM AFFIDAVIT**

Defendants MICHAEL CLANCY, JOHN HALLORAN, KENNETH BOUDREAU, JAMES O'BRIEN, GERALD CARROLL, WILLIAM MOSER, ALBERT GRAF, MICHAEL CLANCY, THOMAS BENOIT, and GERI LYNN YANOW, as Independent Administrator of the Estate of WILLIAM FOLEY (the "Officer Defendants"), through their undersigned attorneys, submit this response in opposition to Plaintiffs' Sur-reply Regarding Defendants' [sic] Allegations of a Sham Affidavit (Dkt. 365) ("Plaintiffs' Sur-reply").

1. Plaintiffs' Sur-reply regarding Coleman's sham affidavit fails to explain why Coleman's affidavit should be allowed. It also fails to explain why Coleman did not identify Halloran and Boudreau as being part of the group of eight officers crowded into an interrogation room until long after Coleman's deposition.

1

2.     Plaintiffs do not dispute that the sham affidavit was signed by Coleman and first disclosed on the *same* day Plaintiffs filed their summary judgment responses.  Yet, and with a straight face no less, they argue that Defendants should have anticipated and addressed the sham affidavit in their opening summary judgment brief, even though the sham affidavit did not exist at the time Defendants filed their opening brief.  Relying on this nonsensical reasoning, Plaintiffs argue the sham affidavit argument in Defendants' Reply is a "new" theory, which is obviously not true.  Defendants cannot predict the future.

3.     Moreover, Plaintiffs do not bother to explain why *they* failed to disclose the affidavit until the day they filed their summary judgment responses, or why *they* failed to explain in their responses how the affidavit aligns with Coleman's deposition testimony or whether the affidavit fits into one of the exceptions to sham affidavit rule set forth in *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020).  Failing to raise these issues when the affidavit was first introduced in Plaintiffs' summary judgment responses constitutes a waiver of the arguments, which Plaintiffs should not be able to cure using a sur-reply.  *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.").

4.     Even with the benefit of a sur-reply, however, Plaintiffs are still unable explain how the affidavit fits within any of the exceptions to the sham affidavit rule.  *James*, 959 F.3d 307, 316.  The bulk of their sur-reply is devoted to arguing that the affidavit is not "inconsistent" with the positions in Coleman's deposition testimony or the supplemental discovery responses, which were served on November 21, 2020, two months after Coleman's deposition had been taken.  But as set forth more below, that argument fails.

5.      What really happened is less complicated and much more dubious.  And it is all about timing.  Plaintiffs thought they found a gap in Coleman's deposition – Defendants' failure to ask Coleman to identify the eight officers in the room – which Plaintiffs tried to exploit with Coleman's eleventh-hour affidavit.  In the affidavit, Coleman claims that he now knows Halloran and Boudreau were among the eight officers who crowded into the interrogation room with him, because he recognized them as the first officers who interviewed him when he was first brought to Area 1.  Plaintiffs are so proud of discovering this purported gap, they could not resist teasing Defendants with it.  (Dkt. 365, p. 2).[1]  The teasing, however, is revealing in that it confirms Plaintiffs' motive.  They are trying to manufacture a question of fact based on their erroneous belief that a gap existed in the record allowing them to do so.

6.      Playing fast and loose with the facts carries risk, and in this case, it was the risk of not accounting for all of Coleman's prior deposition and motion to suppress testimony, offered 20 years apart, in which Coleman testified that he was unable to identify or describe the first detectives who interviewed him.  (*See* Coleman's Dep., 312: 8 – 313: 1, attached as Ex. 2 to DSOF; Coleman MTSS Tr., 52: 5-18, attached as Ex. 26 to DSOF).  Plaintiffs try to water down the inconsistency by pointing to Coleman's supplemental written discovery responses, which were served two months *after* Coleman's deposition, as a basis to argue Coleman "knew then [at the motion to suppress hearing in 1996], and knows now, that the two detectives who questioned him during his initial trip to Area 1 were two of the approximately eight detectives who intimidated him in the interrogation room."  (Dkt. 365, p. 4).  Not true.  Prior to serving his supplemental answers to Boudreau's First Set of Interrogatories on November 21, 2020, Coleman had never identified Halloran and Boudreau as part of the eight officers in the interrogation room.  And before

---

[1] Given that there are duplicate filings in both cases, all docket references are to the *Fulton* docket.

3

disclosing Coleman's affidavit for the first time on the same day Plaintiffs filed their summary judgment responses, Coleman had never disclosed that the *reason* he is able say Halloran and Boudreau were part the eight detectives in the room on the basis that he recognized them as the first detectives who interviewed him. (*Compare* Dkt. 365-1, p. 4-5 to Coleman's Affidavit, ¶5, attached as Ex. 55 to Plaintiff's Statement of Additional Facts). His supplemental answers to Boudreau's interrogatories opaquely frame Halloran's and Boudreau's interview of him at Area 1 and their participation in the group of eight officers in the interrogation room as two un-related events. (Dkt. 365-1, p. 4-5). It is a clever cat-and-mouse game designed to give Coleman a plausible deniability argument about the affidavit should he need it, without also raising alarm bells that he should be re-deposed. Or so Plaintiffs thought.

7. Coleman's deposition, taken on September 9, 2020, proves the affidavit and the supplemental interrogatory answers are fabrications. Not only was Coleman unable to describe the detectives who interviewed him during his first visit to Area 1, but he also made it clear at his deposition that he has no idea what role Halloran and Boudreau played in the Bridgeman homicide investigation or whether they had any interactions with him. This is what Coleman had to say about Boudreau at his deposition:

> Q: Okay. Okay. Do you know the name Boudreau?
>
> **A: I heard of him.**
>
> Q: Do you know who that is?
>
> **A: Yeah. A detective.**
>
> Q: Do you know what role he had, if any, in the Antwinica Bridgeman homicide investigation?
>
> **A: Do I have what?**

> Q: Do you know what role he played -- well, let me ask you this. Do you have any memory of any interaction with Detective Boudreau?
>
> **A: I don't remember.**

(*See* Coleman's Dep, attached as Exhibit 1 to Plaintiff's Statement of Additional Facts ("PSOAF), p. 38: 10-22) (bold original).

8. Coleman said this about Halloran at his deposition:

> Q: How about Halloran, ever heard that?
>
> **A: I heard [sic] him too.**
>
> Q: Do you know anything about Halloran's involvement in what was done to you?
>
> **A: I don't recall.**

(Ex. 1 to PSOAF, p. 39: 10-14) (bold original). Somehow, and only after Coleman's deposition and after decades of being unable to say which detectives interviewed him during his first visit to Area 1, Coleman was suddenly able to identify Halloran and Boudreau with precision.

9. Coleman's supplemental answers to Boudreau's First Set of Interrogatories, which were served in November 2020 two months *after* Coleman's deposition was taken on September 9, 2020, do not create the plausible deniability Plaintiffs had hoped for. In fact, the timing of those supplemental answers make them just as dubious as the affidavit, if not more.

10. In the initial written discovery responses Coleman served on September 7, 2018, almost exactly two years before his deposition, he never mentioned that Boudreau and Halloran were among the eight officers in the room with him, despite being asked to identify specific acts of coercion by each Defendant. It was only at the very end of fact discovery on November 21, 2020, long after Coleman's deposition had been completed, that Coleman first decided to include that detail in a supplement. (*Compare* Coleman's initial answers to Boudreau's First Set of Interrogatories, attached as Exhibit A, to Coleman's supplemental answer to Boudreau's First Set

of Interrogatories, Exhibit A to Plaintiffs' Sur-reply, Dkt 365-1). Moreover, the supplemental answers left out Coleman's explanation that the reason he is able to say Halloran and Boudreau were among the eight officers is that he recognized them as the detectives who interviewed him on his first visit to Area 1. Coleman first provided that specific explanation in the affidavit he filed with his summary judgment response in August of this year, which makes the supplemental answers even more dubious in that they directly contradict Coleman's deposition testimony without any explanation whatsoever.

11. A comparison of the original and supplemental answers to Boudreau's First Set of Interrogatories proves that Coleman has not "always maintained," here or anywhere else, that Halloran and Boudreau were part of the eight officers in the interrogation room. He only did so after he thought he had found a gap in the questioning at his deposition. And all it shows is that Coleman's willingness to manipulate the record is not limited to a single affidavit. He did it twice after his deposition had been completed – once with his supplemental discovery responses in November 2020 and again with his affidavit on the day he filed his summary judgment response – which makes it all the worse and confirms that it was not an "ambiguity" or a mistake.

12. Indeed, it defies logic that Coleman's memory would get better with time, only after his deposition had been completed, and so much so that he is able to recall details about Halloran and Boudreau that he unequivocally he could not recall at his deposition in September of 2020. And none of it can be reconciled with Coleman's deposition testimony. Even with the chance to clean up the record with a sur-reply, Plaintiffs fail to explain the glaring inconsistency between Coleman's deposition testimony and his affidavit/supplemental discovery responses. Instead, Coleman tries to pass off his gamesmanship as "an ambiguity" (Dkt. 365, p. 4-5), but there is nothing ambiguous about what happened.

13. Finally, Plaintiffs' suggestion that the sham affidavit can be remedied at trial on cross examination is an ironic perversion of the rules governing civil litigation, especially from individuals who claim to have been framed for a murder they did not commit. Allowing Plaintiff to use the sham affidavit in any sense would amount to a free pass for violating a fundamental cornerstone of civil litigation: that litigants tell the truth. Not surprisingly, Plaintiffs cite no caselaw for the proposition that a sham affidavit can be disregarded and remedied on cross examination. The opposite is true. The affidavit, as well as the supplemental answers to Boudreau's interrogatories on the same subject matter, must be rejected. *James*, 959 F.3d at 316.

WHEREFORE, for the reasons set forth above and in their Reply, Defendants MICHAEL CLANCY, JOHN HALLORAN, KENNETH BOUDREAU, JAMES O'BRIEN, GERALD CARROLL, WILLIAM MOSER, ALBERT GRAF, MICHAEL CLANCY, THOMAS BENOIT, and GERI LYNN YANOW, as Independent Administrator of the Estate of WILLIAM FOLEY, respectfully request that the Court deny disregard Coleman's affidavit, as well as his supplemental answers to Boudreau's interrogatories on the same subject matter, in deciding Defendants' motion for summary judgment.

Respectfully submitted,

JOHN HALLORAN, KENNETH BOUDREAU, JAMES O'BRIEN, GERALD CARROLL, WILLIAM MOSER, ALBERT GRAF, MICHAEL CLANCY, THOMAS BENOIT, THOMAS KELLY and GERI LYNN YANOW, as independent administrator of the Estate of WILLIAM FOLEY

s/ *Patrick R. Moran*
One of their attorneys
Eileen E. Rosen
Patrick R. Moran
Andrew J. Grill
Special Assistant Corporation Counsel
ROCK FUSCO & CONNELLY LLC

321 N. Clark Street, Suite 2200
Chicago, Illinois 60654
T: 312-494-1000
erosen@rfclaw.com
pmoran@rfclaw.com
agrill@rfclaw.com

Case: 1:18-cv-00998 Document #: 318 Filed: 11/18/21 Page 8 of 8 PageID #:14060