IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Derrell Fulton, AKA Darryl Fulton, ) | | |
| ) | Case No. 17 CV 8696 | |
| Plaintiff, ) | | |
| ) | Hon. Judge Pacold | |
| v. ) | | |
| ) | Magistrate Judge Harjani | |
| City of Chicago, et al., ) | | |
| Defendants. ) | | |
| Nevest Coleman, ) | | |
| ) | Case No. 18 CV 998 | |
| Plaintiff, ) | | |
| ) | Hon. Judge Pacold | |
| v. ) | | |
| ) | Magistrate Judge Harjani | |
| City of Chicago, et al. ) | | |
| ) | | |
| Defendants. ) | | |

**THE OFFICER DEFENDANTS' CORRECTED SUR-REPLY
IN SUPPORT OF THEIR REQUEST TO STRIKE PLAINTIFFS'
RESPONSES TO DEFNDANTS' STATEMENT OF MATERIAL FACTS**

Defendants MICHAEL CLANCY, JOHN HALLORAN, KENNETH BOUDREAU, JAMES O'BRIEN, GERALD CARROLL, WILLIAM MOSER, ALBERT GRAF, MICHAEL CLANCY, THOMAS BENOIT, and GERI LYNN YANOW, as Independent Administrator of the Estate of WILLIAM FOLEY (the "Officer Defendants"), through their undersigned attorneys, submit this Corrected Sur-reply in support of their request to strike Plaintiffs' responses to the Officer Defendants' Statement of Material Facts. (Note, footnote 1 of Dkt. 370 mistakenly indicates that Plaintiffs' response to ¶66 of Defendants' Statement of Material Facts accuses Boudreau of hitting Coleman. The footnote has been corrected in this version).

1. In Section I of their Reply in support of the Motion for Summary Judgment, Defendants established that Plaintiffs' Joint Response to Defendants Statement of Material Facts

1

("Resp. to DSOF") is an egregious violation of Local Rule 56.1, replete with argument, irrelevant additional facts, mischaracterizations of the record and non-responsive case citations. Indeed, Plaintiffs' disregard for the rule is pervasive – a whopping 116 paragraphs are improper and should be stricken, in whole or in part, and the facts in those paragraphs should be deemed admitted. Plaintiffs' strategy, apparently, was to throw as much as possible against the wall, regardless of what it is, and hope that something sticks to prevent summary judgment. But Plaintiffs are not above the rules and are not entitled to respond to a single, concise statement of fact, such as DSOF ¶18 or ¶42, with nearly a page of single-spaced additional facts and argument simply because they want to fill out their theory of the case at every turn.

2. In their Reply in Support of the Statement of Additional Facts ("reply"), Plaintiffs are trying to do it again. Section I of Defendants' Reply nrief addresses over 100 improper responses or, as Plaintiffs note, "70% of the responses," in only five and half pages. Plaintiffs' reply, by comparison, is more than twice that size at 13 pages. (Dkt. 364). The disproportionate size of this reply is no mistake and confirms Plaintiffs are not trying to rebut Section I of Defendants' Reply brief. They are trying to have the last word. In fact, Plaintiffs' reply begins with a discussion of alleged deficiencies in *Defendants'* Statement of Material Facts, not anything in Section I of the Reply, which, of course, is irrelevant to the arguments in Section I of Defendants' Reply. (*See* Dkt. 364, p. 2). Plaintiffs then claim most of the facts at issue are "hotly disputed," which is not true. The word "undisputed" appears *160* times in Plaintiffs' Response to DSOF. There are only 159 paragraphs in DSOF. For literally dozens of paragraphs, Plaintiffs do not dispute the asserted facts but rather admit them in whole or in part and then try to manufacture disputes by including "clarifying" explanations and additional "undisputed" facts and argument that do not respond to the asserted fact.

3. Plaintiffs also repeat arguments from their summary judgment responses instead of responding to the arguments in Section I of Defendants' Reply. For example, they quibble with the phrase "interviewed" so they can argue that Michael Barber is an important witness who was coerced into giving a statement. (Dkt. 364, p. 3-4). Whether and to what extent Plaintiffs think Barber was coerced is irrelevant to the facts asserted in DSOF, ¶¶15-18. Moreover, Plaintiffs' argument ignores Barber's uncontradicted testimony that he gave his statement *voluntarily*, which Plaintiffs have conceded, dooming any contrary argument that Barber was coerced. (*See* Resp. to DSOF ¶18) (Plaintiffs admitting that Barber gave his handwritten statement voluntarily and was treated well by both ASA Garfinkle and the police). In any event, the proper place for Plaintiff to include additional facts is in their own Statement of Additional Facts.

4. Plaintiffs also offer several substantive arguments on the merits of their malicious prosecution claims, which are admittedly drawn from their summary judgment responses, including that the CCSAO was not informed enough to reach its conclusions. (Dkt. 364, p. 6-8). But again, whether Plaintiffs believe the CCSAO did not investigate enough is irrelevant to the facts asserted in DSOF, ¶¶105, 115, 118, 121–123, 126–130, 132, 134, 141, and 160. Plaintiffs are free to include all those additional facts in their Statement of Additional Facts. They cannot double the number of additional facts allowed by filling their Resp. to DSOF with additional information.

5. Plaintiffs also argue that Francine Calimee was not afraid of Coleman or his gang. (Dkt. 364, p. 8). They include facts about individuals who are not material to the outcome of Defendants' motion for summary judgment and, in a footnote, they respond to the Reply's arguments that Halloran cannot be liable for allegedly telling the prosecutor Fulton tried to evade police. (*Id*., p. 9-11, and p. 12, n. 3). All of this is just a rehash of the summary judgment response

3

or an attempt to respond substantively to the Reply, and none of it is appropriate for a reply or responsive to the objections Defendants have raised.

6. Without a hint of irony, Plaintiffs also seize on the truncated nature of the argument in Section I of the Reply, the length of which is consistent with this Court's direction, to argue Section I was not sufficiently developed and is therefore waived. Not only are Plaintiffs wrong – the arguments in Section I and elsewhere in the Reply are more than sufficiently developed – but Plaintiffs' argument ignores that Defendants followed this Court's "case procedures" to the letter with respect to motions to strike, which state:

> The Court is capable of discerning if a new argument has been raised in a reply brief, or if a litigant has failed to comply with the requirements of Local Rule 56.1; such errors do not require supplemental motion practice. If a party believes that the other side's brief contains inaccurate facts or that the other side's Local Rule 56.1 statement (in summary-judgment briefing) contains an unsupported assertion, then the complaining party should so argue in the response or reply brief, or in the responsive 56.1 statement.

(See https://www.ilnd.uscourts.gov/PrintContent.aspx?cmpid=1114).

7. Recognizing the Court's role in determining the appropriateness of the Plaintiffs' Response to DSOF, Section I of the Reply does not need to exhaustively address each and every violation. Consistent with the Court's case procedures, it is enough to bring the Court's attention to the violations so the Court can make the determination. Section I concisely does exactly that, identifying the offending responses by category and providing the legal basis for striking them, without getting into a lengthy and detailed argument about each of the 116 responses that would have overshadowed the Reply itself. Moreover, many of these offending responses are addressed throughout the Reply, consistent with the Court's direction set forth above.

8. Plaintiffs also *admit* to including additional facts, which, they argue, they should be allowed to do regardless of Local Rule 56.1, citing a single district court case from 1995. (*See*

*e.g.*, Dkt 309-1, p. 5 *citing Curde v. Xytel Corp.*, 912 F. Supp. 335, 338 (N.D.Ill. 1995)). In other words, Plaintiffs apparently believe "strict compliance" with the rule should apply to everyone except them. But the example they offer – Plaintiffs' response to ¶18 of DSOF about what Barber testified to before the grand jury – only underscores the fallacy of the argument. Plaintiffs concede that the assertion in paragraph 18 is "technically accurate," but Plaintiffs believe they are entitled to go beyond admitting or denying this accurate assertion in order to mitigate its effect. Plaintiffs' argument only reflects a complete misunderstanding of Local Rule 56.1 and a deep sense of entitlement. And their reliance on *Curde* is misplaced. In that case, the court elected not to strike additional facts because those facts "either clarify the extent to which Plaintiff agrees" or "point out exactly how she disagrees." *Curde,* 912 F. Supp. at 338. Setting aside that *Curde* is an outlier on this issue and not the law of this district, neither situation applies here.

9. The same is true with Plaintiffs' Response to ¶42 of DSOF. Paragraph 42 asserts a simple fact: that after transporting Calimee and Williams to Area 1, Detectives Halloran, Boudreau, Carroll, and O'Brien went to the West side of Chicago to look for Eddie Taylor until about 3:00 a.m. (Dkt. 340, ¶42). Instead of responding with a simple "disputed" or "undisputed," Plaintiffs filled nearly a page with single-spaced additional facts and argument. (*Id.*). Plaintiffs try to justify this abusive tactic by referring to their perceived need to dispute DSOF ¶68, as if they entitled to sprinkle irrelevant facts into one response in order to develop their theories for a different response 26 paragraphs later. (Dkt. 364, p. 5-6). But Plaintiffs are not entitled fill out their theories with additional non-responsive facts to address arguments 20 paragraphs later.

10. Plaintiffs then argue that Defendants did not provide any support to show that including additional facts to dispute an "implied assertion" of fact is improper. But that argument misses the point and again goes to the heart of Plaintiffs' abusive tactics. They do not include

5

additional facts simply because they think the paragraph has an "implied" meaning, which, by the way, ¶42 clearly does not. Implications and inferences are for the argument, not the statement of facts. Plaintiffs also argue that admitting the truth of ¶42 cannot be reconciled with the contrary evidence cited in ¶¶11, 14–16, and 29–33 of PSOAF. Not true. Defendants disputed most of the facts and partially admitted some. There is no difficulty in reconciling the truth of ¶42 with the partially admitted aspects of ¶¶11, 14, 29–32 of PSOAF.

11. Plaintiffs then try to salvage their response to ¶42 by arguing they were merely demonstrating that the evidence cited does not support the assertions made in ¶42. If that were true (and it is not), Plaintiffs need only say so. Instead, they again use the alleged "dispute" as an excuse to include an additional face: the time when Calimee was dropped off at Area 1, as if that fact somehow undermines Defendants' assertion that they were looking for Eddie Taylor on the West side until 3:00 a.m. *after* Calimee was brought to Area 1. It does not, but that was not the point of Defendants argument. The point was to repeat and supplement arguments from their summary judgment responses.

12. Plaintiffs again try to justify their tactic of using additional facts to fill out their theory of the case, particularly those paragraphs related the State's decision to not retry Plaintiffs. (Dkt. 364, p. 7). Plaintiffs cite their response to ¶121 of DSOF as an example in which they believe they were justified in adding new facts, but Plaintiffs' argument only confirms their disregard for Local Rule 56.1. Paragraph 121 states, in part, that the CCSAO's Mark Rotert considered Coleman's allegations of abuse in recommending a retrial. Plaintiffs do dispute this assertion, but *add* that Rotert did not consider the allegations of abuse against certain officers by other people that have nothing to do with this case, which, of course, is not responsive at all to whether Rotert considered Coleman's allegations. (Dkt. 364, p. 8).

13. Plaintiffs' response to ¶126 is another example of Plaintiffs' disregard for the rule. There, Plaintiffs again do not dispute the asserted fact – that "Report and Recommendation" by the CCSAO's Conviction Integrity Unit concluded with specific findings – but try to justify nearly a page of single-spaced additional information by claiming they are challenging Rotert's "competency" to offer the conclusions, citing *Fenje v. Feld*, 301 F. Supp.2d 781, 810-11 (N.D.Ill. Dec. 9, 2003). But the line Plaintiffs cite from *Fenji* only establishes when a party should object to the admissibility of evidence at summary judgment; it does not speak to competency. More importantly, Plaintiffs are not really challenging the admissibility of the report. They are disputing the merits of the conclusions in the report, which is not a proper basis for Plaintiffs to include a myriad of additional facts.

14. Plaintiffs also claim they have not mischaracterized the record and cite their "painstaking" efforts to show O'Brien is the person who struck Coleman as an example. (Dkt. 364, p. 11). As set forth in the Reply, the only "painstaking" effort taken was the effort to mischaracterize O'Brien's testimony about the color of his hair. (Dkt. 356, p. 23-24). O'Brien is not the only instance where Plaintiffs cherry-picked lines to mischaracterize testimony, nor is it the only example addressed in the Reply. In their responses ¶¶18 and 19, for example, Plaintiffs mischaracterized Barber's testimony to make it seem as though Barber did not "believe" he was given a chance to review his statement but omitted Barber's clarification that his "belief" arose from his inability to recall in June 2019, *25 years later*, whether the ASA had given him an opportunity to review or correct his handwritten statement. (Dkt. 356, p. 32, n. 14). In their response to ¶42, Plaintiffs dispute that Halloran and Boudreau were on the West side while Coleman was being interviewed at Area 1 because Halloran "has no independent recollection of going to the west side to look for Taylor." But as set forth in the Reply, Plaintiffs omit that

Halloran refreshed his recollection with his reports and then testified that he was on the West side of Chicago between midnight and 3:00 a.m. on April 29, 1994, while Coleman was being interrogated at Area 1. (Dkt. 356, p. 20). Plaintiffs' responses to ¶¶60, 66, 90, all involve similar mischaracterizations, and all are discussed in the Reply. (*See* Dkt. 364, p. 21-23, 28-29).[1]

15. Next, Plaintiffs argue that a motion to strike is an improper way to address the numerous immaterial facts Plaintiffs included in the responses about Foley and Clancy, and even take the position that Defendants fail to "cogently articulate the precise legal basis for striking the unidentified immaterial facts." The cogent articulation should not be hard for Plaintiffs to find. It is on page 5 of the Reply. (Dkt. 356, p. 5) (identifying responses that violate Local Rule 56.1(b)(3)(C) by raising immaterial factual disputes that do not respond to the asserted facts in the paragraph, often couched as "clarification" of further explanation, *citing Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (56.1 materials should be limited to facts that are pertinent to the outcome of the issues identified in the summary judgment motion.); *see also Tarau v. Coltea*, 2017 WL 3521410 at * 1 (N.D. Ill. Aug. 16, 2017) (Gottschall, J.) (the Court need not be bothered with disputes about immaterial facts)). Plaintiffs try to excuse their abuse of Local Rule 56.1 by arguing that the allegations against Foley and Clancy are relevant. Setting aside that Plaintiffs are wrong – they have not established that any of the other Officer Defendants were personally involved in any allegation of misconduct against Foley or Clancy – Plaintiffs' belief in the relevance of the allegations does not entitle them to disregard the rule. The argument is only further evidence of Plaintiffs' disregard for the rule and their sense of entitlement.

---

[1] Plaintiffs' Resp. to ¶60 claims O'Brien was the detective who hit Coleman without citing support; the Resp. to ¶66 claims, without support, that Boudreau was the "short little white guy" who promised Coleman he could go home if he answered the questions correctly; Plaintiffs' Resp. to ¶90 claims that, because O'Brien and Carroll interviewed Kimberly Johnson, they must have also interviewed Fulton. None of the citations support this contention and Plaintiff's claim that they do mischaracterizes the record citations.

16. Finally, Plaintiffs go into a lengthy discussion of cases this Court previously decided. *See Ortega v. United States*, No. 16-cv-8402, 2021 WL 4477896, at *2 (N.D. Ill. Sept. 30, 2021) (Pacold, J.); *Beaulieu v. NewQuest Mngmt. of Ill., LLC*, No. 17-cv-5672, 2021 WL 4502163, at *1 (N.D. Ill. Sept. 30, 2021) (Pacold, J.). But there is no dispute that both cases stand for the proposition that this Court is entitled to strict compliance with Local Rule 56.1. Plaintiffs have failed to meet that expectation. The Court should strike the offending responses and deem those facts admitted.

WHEREFPORE, for the reasons set forth above and in their Reply in support of their Motion for Summary Judgment (Dkt. 536), Defendants MICHAEL CLANCY, JOHN HALLORAN, KENNETH BOUDREAU, JAMES O'BRIEN, GERALD CARROLL, WILLIAM MOSER, ALBERT GRAF, MICHAEL CLANCY, THOMAS BENOIT, and GERI LYNN YANOW, as Independent Administrator of the Estate of WILLIAM FOLEY, respectfully request that the Court strike Plaintiffs' responses to Defendants' Statement of Material Facts, as identified in Defendants' Reply in support of their Motion for Summary Judgment, and for any further and additional relief the Court deems just and appropriate.

Respectfully submitted,

JOHN HALLORAN, KENNETH BOUDREAU, JAMES O'BRIEN, GERALD CARROLL, WILLIAM MOSER, ALBERT GRAF, MICHAEL CLANCY, THOMAS BENOIT, THOMAS KELLY and GERI LYNN YANOW, as independent administrator of the Estate of WILLIAM FOLEY

s/ Patrick R. Moran
One of their attorneys
Eileen E. Rosen
Patrick R. Moran
Andrew J. Grill
Special Assistant Corporation Counsel
ROCK FUSCO & CONNELLY LLC

9

321 N. Clark Street, Suite 2200
Chicago, Illinois 60654
T: 312-494-1000
erosen@rfclaw.com
pmoran@rfclaw.com
agrill@rfclaw.com